**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Kevin L. Olson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:16-cv-93 |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Social Security Administration, Nancy A. | ) | |
| Berryhill, Acting Commissioner, and | ) | |
| Department of the Treasury, Steven T. | ) | |
| Mnuchin, Secretary of the Treasury, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Kevin L. Olson (Olson) challenges the constitutionality of the Affordable

Care Act (ACA), the Federal Insurance Contributions Act (FICA), and the Self-

Employment Contributions Act (SECA). He also challenges the religious exemptions of

those Acts. Olson seeks several forms of relief: (1) an injunction against payment of the

taxes and penalties imposed under those statutes, (2) a declaratory judgment that he

qualifies for the religious exemptions under those statutes, (3) a declaratory judgment

that those statutes are unconstitutional, and (4) a refund of taxes and penalties he has

paid pursuant to those statutes.

As defendants, Olson named two federal entities and the heads of both entities.

The defendants have moved to substitute the United States as the sole defendant, and to

dismiss the complaint (1) for lack of subject matter jurisdiction, (2) alternatively, for

failure to state a claim upon which relief can be granted, or (3) alternatively, to dismiss

any claims against certain individuals and governmental entities for lack of personal

jurisdiction and insufficient service of process.

Because Olson is proceeding pro se, his pleadings are to be liberally construed.

See Erickson v. Pardus, 551 U.S. 89, 93 (2007). Thus, in considering the pending

motions, this court has considered all of the memoranda Olson has filed,[1] despite

memoranda which far exceed the 40-page limitation of Civil Local Rule 7.1(A)(1)[2] and

despite a surreply having been filed without pre-filing permission under Civil Local Rule

7.1(C). But, the court now advises Olson that any documents filed in the future must

comply with all applicable local rules. Further, the court will impose a page limitation on

any objection either side may file to this Report and Recommendation.

## I.      Summary

In part, this case involves issues regarding standing, sovereign immunity, and

ripeness. For the reasons discussed below, the United States should be substituted as

the sole defendant, and the district judge should conclude that the court lacks subject

matter jurisdiction over all claims except those for injunctive and declaratory relief

under the ACA. But, the district judge should further conclude that Olson has not stated

plausible claims which would entitle him to any relief under the ACA. The defendants'

---

[1] Documents considered are the following: Complaint, (Doc. #1), Response to Motion for an Extension of Time to Answer, (Doc. #14), Response to Motions to Substitute Party and to Dismiss (and its exhibits insofar as they contain argument or are encompassed by the complaint), (Doc. #21), Supplements to Response, (Doc. #22; Doc. #24), Surreply, (Doc. #25), Supplement to Surreply, (Doc. #26), and Notices, (Doc. #30; Doc. #31; Doc. #32).

[2] With his responsive brief, (Doc. #21), Olson filed 29 documents as exhibits; 10 of those exhibits are actually briefs rather than exhibits, and those 10 documents total 427 pages. (See Docs. #21-1 , #21-2, #21-3, #21-4, #21-11, #21-12, #21-14, #21-16, #21-18, #21-19). Additionally, two of Olson's exhibits are Supreme Court opinions, with his commentary and arguments interspersed into the opinions' text. (Docs. #21-24, #21-25). The court notes much duplication and repetition in Olson's briefing. The court has not considered those exhibits which lack argument or are not encompassed by the complaint. See Mattes v. AVC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) (In considering a motion to dismiss, "the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint.").

motion to dismiss for lack of personal jurisdiction and insufficient service of process, or alternatively for failure to state a claim against other governmental agencies and employees, should be granted. The district judge should not consider any claims Olson raised subsequent to the complaint and the supplement to the complaint, or alternatively, the district judge should conclude that the claims not pled in the complaint or the supplement to the complaint fail to meet plausibility requirements. In summary, the district judge should dismiss Olson's complaint in its entirety.

## II.    Background

The FICA establishes a system under which employers are required to withhold Social Security and Medicare taxes from employees' earnings, and employers are required to transfer those withheld earnings to the Internal Revenue Service (IRS). The SECA requires self-employed persons to pay analogous Social Security and Medicare taxes directly to the IRS. Though Olson's complaint and briefs describe him as self-employed, those documents reference FICA rather than SECA. In their briefing, the defendants referenced the two statutes together, i.e., FICA/SECA, and this court has used the same method of reference.[3]

Both FICA and SECA exempt members of certain religious sects whose tenets include conscientious objections to receipt of insurance benefits:

> Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he [or she] is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he

---

[3] Olson's later fillings referred to the Social Security Act (SSA) rather than FICA or SECA.

[or she] is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act).

26 U.S.C. § 1402(g). The statute goes on to detail requirements of the religious exemption: evidence of membership in and adherence to the tenets or teachings of a religious sect, waiver of all benefits under the Social Security Act (SSA), a finding that the religious sect has tenets or teachings in opposition to acceptance of any insurance benefits, a finding that the religious sect has made reasonable provision for its dependent members for a substantial period of time, a finding that the religious sect has been in existence since December 31, 1950, and no benefits having become payable to the applicant before the applicant filed the SSA benefit waiver. Id.

Since 2014, the ACA has required that individuals either be covered under a qualified health insurance plan or make a "shared responsibility payment (SRP)" when filing an annual tax return. 26 U.S.C. § 5000A. But, the ACA includes a religious exemption from that requirement. The ACA's religious exemption refers back to the FICA/SECA religious exemption:

["Applicable individual"] shall not include any individual for any month if such individual has in effect an exemption under [42 U.S.C. § 1311(d)(4)(H)] of the [ACA] which certifies that such individual is–

(i)     a member of a recognized religious sect or division thereof which is described in section 1402(g)(1) [the FICA/SECA religious exemption], and

(ii)    an adherent of established tenets or teachings of such sect or division as described in such section.

Id. § 5000A(d)(2). Thus, the requirements for application of the religious exemption to the ACA are analogous to those of the religious exemption to the FICA/SECA.

4

Olson describes himself as self-employed since the late 1990s, as having renounced his membership in organized religion in 2002, and as having canceled all of his private insurance in 2005-2006. (Doc. #1, p. 2). Olson states, "My beliefs in GOD are one on ONE, and there is no religious tenets or requirements, it's all up to each individual as GOD requires, 'You shall have no other gods before or besides ME.'" (Doc. #21-10, p. 6). Olson contends that the ACA and the FICA/SECA violate his right to freely practice his sincere beliefs, violate separation of church and state by "establishing a specific structure of religious tenets of compliance," violate his rights to self-determination, and "use[] coercion of loss of Medicare and Social Security benefits" if a religious exemption is granted. (Doc. #1, p. 2). Olson further asserts that the statutes discriminate against him based on age, construing section 1402(g)'s requirement that a religious sect have been in existence since 1950 as discriminating against any person born after that date. Id.

Olson's complaint states that he has been "seeking resolution" of his objection to the religious exemptions since 2014. An attachment to Olson's responsive brief details contacts he made with members of North Dakota's Congressional delegation, with the former President of the United States, and with other elected officials prior to filing this lawsuit. (Doc. #21-10). The supplement to Olson's complaint describes a telephone call Olson made to the "Taxpayer Advocate Service, Tax Law Section" and also describes documents Olson submitted to the Federal Bureau of Investigation (FBI) to request initiation of criminal action against various government officials for alleged violations of his civil rights. (Doc. #14, pp. 5-6). (See also Doc. #21-15) (copy of complaint Olson submitted to the FBI). Olson contends that in March 2016, the ACA required him to

either "[p]urchase health insurance in violation of [his] religious beliefs and practices or pay the illegal tax."[4] (Doc. #14, p. 6).

### III.   Motion to Substitute United States as Sole Defendant

The complaint names the Social Security Administration, the Department of the Treasury, and the heads of each of those agencies as defendants.[5] Though not named as parties in the caption of the complaint, the request for relief in the original complaint includes requests for injunctive relief against the United States Congress and the President of the United States (present or future). (Doc. #1, p. 3). The supplement to the complaint includes a request that the following be added as parties, "the Department of Justice [DOJ] as a whole with additional specific application to [former] Attorney General Lynch and the Federal Bureau of Investigation as a whole with additional specific application to Mr. James B. Comey, Director of the FBI, and Mr. Richard T. Thornton, Special Agent in Charge, FBI Minneapolis Division." (Doc. #14, p. 11).

---

[4] Olson's reference to March 2016 is the approximate date he filed his 2015 tax return. Beginning on January 1, 2014, the ACA required taxpayers to either maintain qualifying health insurance or make an SRP. Thus, the first SRP made by any taxpayer was when that taxpayer filed a 2014 tax return in 2015. Based on the complaint and supplement, it is unclear whether Olson made an SRP for the 2014 tax year, but he contends that he has been "seeking [a] resolution" since that year. (Doc. #1, p. 2). In his complaint, Olson states that he made an SRP in 2016 for the 2015 tax year. Id.

[5] Olson states that he named the Social Security Commissioner as a defendant because she has "absolute authority" to determine whether an individual receives a religious exemption from the requirement to purchase health insurance or make an SRP, and that because of that role the Commissioner "also becomes an officer of the [IRS]." (Doc. #14, p. 9). He states that he named the head of the Department of Treasury because he oversees the Commissioner in her role as an IRS officer. Id.

It is the defendants' position that the United States is the real party defendant and should be substituted for all of the currently named defendants.[6] In support of their position, the defendants cite <u>Dugan v. Rank</u>, which held that a suit is considered to be against the sovereign, i.e., the United States, "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." 372 U.S. 609, 620 (1963) (citations and quotation marks omitted); <u>see</u> <u>also</u> <u>Coleman v. Espy</u>, 986 F.2d 1184, 1189 (8th Cir. 1993). Additionally, the Department of the Treasury is not an entity that is subject to suit, because Congress has not authorized that department to be sued "eo nomine." <u>Gunnick v. U.S. Gov't</u>, No. 08-781, 2008 WL 3166308, at *3 (D. Minn. Aug. 4, 2008).

Olson objects to removing the individual department heads as defendants and to adding the United States as a defendant. (Doc. #14, p. 2; Doc. #21-1, p. 19). But, none of the constitutional or statutory authority which Olson cites in support of that position contradicts the law upon which the defendants rely and which is binding on the district courts. Therefore, the United States should be substituted as the sole defendant.

## IV. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The defendants contend that the court lacks subject matter jurisdiction for three reasons—that Olson does not have standing because he did not follow the established procedure to request the religious exemptions which he challenges, that the United

---

[6] Defendants contend that, to the extent Olson seeks to raise claims against any defendants not named in the caption of the complaint, those claims must also be construed as against the United States.

States has not waived its sovereign immunity as to several claims which Olson has asserted, and that Olson's claims are not ripe for judicial review. Additionally, the defendants contend that this court lacks jurisdiction to the extent Olson alleges any claims pursuant to the Age Discrimination Act (ADA).

## A. Standing

 It is, of course, well-established, that a plaintiff must demonstrate three factors to have federal court standing: (1) an actual or imminent, and concrete and particularized injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury would be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). When, as does Olson, a plaintiff challenges an action taken by one of the other branches of the federal government as unconstitutional, the standing inquiry is to be "especially rigorous." Raines v. Byrd, 521 U.S. 811, 819-20 (1997).

Olson's complaint and supplement allege several claims, and it is necessary to separately analyze whether he has standing to bring each of those claims. First, he asserts that the ACA and the FICA/SECA violate the First Amendment's Free Exercise Clause. (Doc. #1, p. 2; Doc. #14, pp. 2-4). He states that purchasing health insurance violates his religious beliefs and practices, (Doc. #14, p. 6), and that instead of purchasing health insurance in violation of those beliefs, he paid the ACA's SRP, id. at 7. He describes the SRP as an "illegal and unconstitutional tax"on his religious activities, and he describes the ACA as an "overreach of power." Id. at 3, 14; see also id. at 6. He

further states that he does not believe in life insurance or retirement insurance but that the government "forced" those upon him through the SSA.[7] Id. at 6.

Second, Olson asserts that the ACA's religious exemption violates the First Amendment's Establishment Clause, since it "favors one religion over another" and is "excessive[ly] entangle[d] with religion." Id. at 3, 15. He states that he "has no issue paying taxes that have no association of any kind with religion." Id. at 7.

Third, although Olson contends that the ACA and FICA/SECA religious exemptions are unconstitutional, he seeks a religious exemption from the SRP and from FICA/SECA taxes. Id. at 4-5, 16. He requests, however, that his exemptions not be conditioned on the statutorily required waiver of Medicare and Social Security benefits, since he has paid FICA/SECA taxes "for years." (Doc. #1, p. 2).

On one hand, Olson argues that the religious exemptions are unconstitutional and he does not assert an entitlement to those exemptions. On the other hand, he argues the exemptions are unconstitutional but asserts an entitlement to the exemptions without the required waiver of Medicare and Social Security benefits. The court separately addresses Olafson's standing to bring claims not asserting an entitlement to the religious exemptions and his standing to bring claims asserting entitlement to the religious exemptions.

---

[7] Olson makes contradictory statements in his complaint and supplement. He contends that insurance is against his religious beliefs, yet he objects to waiver of his Social Security and Medicare benefits as required to obtain the religious exemptions. Since Social Security and Medicare are forms of insurance, Olson would be acting against his beliefs by accepting those benefits. For the purpose of this Report and Recommendation, the court accepts that insurance is against Olson's religious beliefs, yet he wishes to receive certain insurance benefits, despite his positions being contradictory.

### 1. Claims Not Premised on Assertion of Entitlement to the Religious Exemptions

The court has identified no Eighth Circuit cases addressing standing to challenge the religious exemptions at issue and so looks to cases from other circuits. In a DC Circuit case, the plaintiff argued the ACA's religious exemption unconstitutionally favored faith over nonbelief because it "allow[s] individuals to avoid both paying for insurance and paying the penalty if they abjure insurance for religious reasons, but not if they abjure it for secular reasons." Cutler v. U.S. Dep't of Health & Human Servs., 797 F.3d 1173, 1180 (D.C. Cir. 2015). The DC Circuit found the plaintiff had adequately alleged an injury in fact "to his constitutional right not to be treated differently—not to be penalized for lacking insurance—just because he is not religiously motivated." Id. The DC Circuit further found that the plaintiff was "explicit that he [was] injured by being forced to choose between paying for compliant insurance and paying a penalty. That is the type of direct and concrete injury that satisfies Article III, regardless of how many people face the same financial choice." Id. (citation omitted).

Olson's claim is analogous. He argues that the ACA's religious exemption favors members of organized religions over those who hold similar religious beliefs but who are not part of an organized religious sect, because it allows those who qualify for the religious exemption to avoid both paying for insurance and paying the SRP if they renounce insurance, but not if they do so for personal religious reasons unrelated to membership in an organized religious sect. Also, similarly to the Cutler plaintiff, Olson contends that he was injured by being forced to choose between abandoning his belief system (by paying for insurance) and paying an SRP. Thus, it appears that Olson has

alleged an actual injury with regard to those claims which are not premised on an assertion of entitlement to the religious exemption. Additionally, he has sufficiently alleged that his injury stems from the ACA and that the injury could be redressed if the court were to grant Olson the relief he has requested. The district judge should therefore conclude that Olson has standing to bring claims not asserting an entitlement to the religious exemption.

Olson's arguments on this issue center on the ACA's SRP. But, he also raises claims not premised on an entitlement to the FICA/SECA religious exemption. As discussed above, Olson alleges that he is treated differently than others who, like him, abjure insurance for religious reasons. Although it is contrary to his religious beliefs, Olson is required to pay, and he has paid, FICA/SECA taxes designated for insurance benefits. That alleged injury stems directly from the FICA/SECA, and it could be redressed if this court were to grant the relief Olson requests. So, as with his claims not asserting an entitlement to the ACA religious exemption, the district judge should also conclude that Olson has standing to bring claims not asserting an entitlement to the FICA/SECA religious exemption.

### 2.    Challenges Premised on Assertion of Entitlement to the Religious Exemptions

The defendants argue that, because he has not personally claimed and been denied the ACA and FICA/SECA religious exemptions, Olson has not pled an "injury in fact" and so does not have standing to challenge those exemptions. That argument, however, would apply only to Olson's assertion of an entitlement to the religious exemptions.

The parties do not cite, and this court's research has not identified, Eighth Circuit cases addressing the question of whether one must apply for and be denied the religious exemptions in order to have standing to challenge those exemptions. The defendants rely on a Seventh Circuit case, an Establishment Clause challenge to a statute which exempts housing benefits provided to a "minister of the gospel" from inclusion in gross income for purposes of federal income taxation. Freedom From Religion Found., Inc. v. Lew, 773 F.3d 815, 821 (7th Cir. 2014) (hereinafter "FFRF"). In FFRF, the plaintiffs received a housing allowance as a portion of their salaries from the foundation—an organization of atheists and agnostics—and the defendant questioned their standing to challenge the ministerial housing exemption.

As the Seventh Circuit discussed, an injury sufficient to demonstrate standing may be "particularly elusive" in the context of an Establishment Clause challenge. Id. at 819. But there are several recognized paths to standing to bring an Establishment Clause challenge; the FFRF plaintiffs asserted standing based on having "incurred a cost or been denied a benefit on account of their religion." Id. at 820 (quoting Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 130 (2011)).

The Seventh Circuit found that the FFRF plaintiffs had no standing because they had not claimed and been denied the housing allowance exemption which they sought to challenge:

> The plaintiffs here argue that they have standing because they were denied a benefit (a tax exemption for their employer-provided housing allowance) that is conditioned on religious affiliation. This argument fails, however, for a simple reason: the plaintiffs were never *denied* the parsonage exemption because they never asked for it. Without a request, there can be no denial. And absent any personal denial of a benefit, the plaintiffs' claim amounts to nothing more than a generalized grievance about [the exemption's]

> unconstitutionality, which does not support standing. . . . In other words, the mere fact that the tax code conditions the availability of a tax exemption on religious affiliation does not give a plaintiff standing to challenge that provision of the code. A plaintiff cannot establish standing to challenge such a provision without having personally claimed and been denied the exemption.

Id. at 821 (footnotes omitted).

In reaching its decision, the FFRF court described the issue—whether a plaintiff has standing to challenge the availability of a tax exemption based on religious affiliation without having claimed and been denied the exemption—as one which had never been squarely addressed by the Supreme Court. The defendants recognize that two other circuit courts—the DC Circuit (Cutler) and the Fourth Circuit—have found standing to challenge the ACA's religious exemption under those circumstances. But, the defendants would distinguish those cases from Olson's because neither of those cases discussed whether a denial of an application for an exemption was a prerequisite to standing.

As discussed above, the DC Circuit found that the Cutler plaintiff had standing to litigate his claim that the ACA's religious exemption unconstitutionally favored faith over non-belief. While it is true, as defendants argue, that the Cutler opinion does not discuss whether denial of an application is a prerequisite to standing, it is also true that the Cutler plaintiff did not assert entitlement to an exemption because of a conscientious objection to insurance; Olson, in part, argues an entitlement to that exemption, despite not being a member of a religious sect whose tenets include that conscientious objection.

In the Fourth Circuit case, a university challenged various aspects of the ACA, including an "employer mandate" related to the religious exemption. The defendants argued that the university had no standing, because there had not yet been a determination of whether the health insurance coverage it already provided to its employees met the ACA's criteria. The Fourth Circuit determined that, in the context of a motion to dismiss, the university was not required to prove that the ACA's employer mandate would increase its costs of providing health coverage in order to have standing; rather, it was required to "plausibly allege" that the ACA would increase its costs. Though finding the university had standing to challenge the ACA's religious exemption, the Fourth Circuit ultimately determined the exemption was "rationally related to the Government's legitimate interest in accommodating religious practice while limiting interference in the Act's overriding purposes." Liberty Univ., Inc. v. Lew, 733 F.3d 72, 102-03 (4th Cir. 2013). Again, the Fourth Circuit did not discuss whether denial of an application for the religious exemption was a prerequisite to standing.

The court must also consider whether Olson has demonstrated that his application for the religious exemptions would be futile. Olson states that he is not "eligible to apply" for a religious exemption because of his "lesser age." (Doc. #14, p. 5). Olson, who was born after 1950, alleges he would not qualify for the religious exemption since he does not belong to a religious sect that has been in existence since 1950; he does not allege membership in any religious sect. Rather than apply for the exemption, Olson states that he reached out to members of Congress and the former president, contacted a taxpayer advocate service, and submitted a complaint to the FBI. Id. at 5-6. Olson further states that a taxpayer advocate service advised him that he did not qualify for an exemption. Id. at 6.

The Eighth Circuit has held that a court "may find a plaintiff has standing even if he or she has failed to take steps to satisfy a precondition if the attempt would have been futile." Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1162 (8th Cir. 2008) (citing Sporhase v. Neb. ex. rel. Douglas, 458 U.S. 941, 944 n.2 (1982)) (holding that appellants' failure to submit an application for a permit to withdraw and transport ground water did not deprive them of standing because their application would have been futile). The Pucket plaintiffs—parents and students at a private religious school—alleged that their local school district's discontinuation of busing services violated the Equal Protection and Free Exercise Clauses. Id. at 1154-56. The Eighth Circuit affirmed dismissal of the case for lack of standing, in part because the plaintiffs had never requested that the school district reinstate busing services and because there was no allegation or evidence that such a request would have been futile. Id. at 1151-62.

Although Olson has not applied for the religious exemptions, he has sufficiently alleged that any application would likely be futile; he likely would not qualify for those exemptions because he claims no membership in a religious sect whose tenets include objection to insurance.[8] Additionally, Olson has paid the ACA's SRP and FICA/SECA

_____

[8] In FFRF, the Seventh Circuit declined to consider whether the plaintiffs' application for the tax exemption would have been futile, stating that "[w]hether or not this is true, it is irrelevant: to establish standing, a plaintiff must request (and be denied) a benefit, even if, practicably speaking, the request has no chance of success." 773 F.3d at 825 n.6 (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166-67 (1972)). Although the Seventh Circuit held that the FFRF plaintiffs did not suffer an actual injury because they were not denied a benefit in the absence of an application for that benefit, other circuits (in addition to the Eighth Circuit) have found that an application for a benefit is not a prerequisite to standing if it would be futile. See Safari Club Int'l v. Jewell, 842 F.3d 1280, 1286 (D.C. Cir. 2016) (holding that plaintiffs had standing to challenge the Interior Department's Fish and Wildlife Service's suspension of import permits though they had not applied for those permits, since it would have been futile for plaintiffs to

taxes despite his assertion that purchasing health, life, and retirement insurance violates his religious beliefs and practices, and those payments have been designated for healthcare programs and insurance benefits.[9] It appears that Olson has sufficiently alleged an actual injury with regard to those claims asserting an entitlement to the religious exemptions. Additionally, Olson has sufficiently alleged that his injury stems from the ACA and the FICA/SECA, and that the injury could be redressed if the court were to grant the relief he has requested. The district judge should therefore conclude that Olson has standing bring claims asserting an entitlement to the religious exemptions.

### B. Sovereign Immunity

In the absence of a waiver, the United States, as a sovereign, is immune from suit. United States v. Dalm, 494 U.S. 586, 608 (1990). A waiver of sovereign immunity is a prerequisite to federal court jurisdiction in any case against the United States. SBA v.

---

submit applications when the Department's internal agency memorandum directed that "if an import permit application . . . is received, the application will be denied"); McAllen Grace Brethen Church v. Salazar, 764 F.3d 465, 471-72 (5th Cir. 2014) (holding that plaintiffs had standing to challenge the Department of Interior's enforcement of the Migratory Bird Treaty Act and the Bald and Golden Eagle Protection Act, which prohibit those who are not members of federally-recognized tribes from possessing eagle feathers, since it would have been futile for the plaintiffs—none of whom were members of a federally-recognized tribe—to apply for a permit to possess eagle feathers); Taniguchi v. Schultz, 303 F.3d 950, 957 (9th Cir. 2002) ("We have consistently held that standing does not require exercises in futility.") (citations omitted); United States v. Harden, 297 F.3d 1116, 1121 (10th Cir. 2002) ("When, however, it would have been futile for a claimant to apply for a benefit, courts have not denied the claimant standing because of his failure to apply.") (citations omitted).

[9] Olson's case is distinguishable from FFRF, since Olson's SRP and FICA/SECA taxes are designated for that which is against his religious beliefs—insurance and healthcare spending. The FFRF plaintiffs' tax was not designated for something against their religious beliefs.

Rinehart, 887 F.2d 165, 169 (8th Cir. 1989). The plaintiff bears the burden of showing a waiver of sovereign immunity. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995); Sailer v. Dept. of the U.S. Army, No. A1-04-53, 2004 WL 1490365, at *2 (D.N.D. July 1, 2004).

The complaint and supplement do not plead a waiver of sovereign immunity, and the defendants argue the case could be dismissed for that reason alone. In response to the defendants' motion, Olson contends that sovereign immunity is unconstitutional because it is not based on explicit language of the constitution.[10]

In addition to asserting Olson's lack of pleading a waiver as a reason to dismiss, the defendants argue that waiver of sovereign immunity for several of Olson's claims cannot be based on any statute. Specifically, the defendants argue there is no waiver of immunity to be found in the tax refund provision of 26 U.S.C. § 7422(a) or under the Administrative Procedures Act (APA).

As discussed below, any claims that could be liberally construed as brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1999), Olson's claim for refunds of the SRP and FICA/SECA taxes, Olson's claim for monetary damages, and his claim for injunctive and declaratory relief under the FICA/SECA are barred by sovereign immunity, and the district judge should conclude that the United States has not waived its sovereign immunity with regard to those claims.

---

[10] The United States Supreme Court has consistently applied the sovereign immunity doctrine. See, e.g., FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 463 U.S. 206, 212 (1983); United States v. Sherwood, 312 U.S. 584, 586 (1941).

17

### 1. <u>Bivens</u> Claims

To the extent that Olson raises any <u>Bivens</u> claim, that claim must fail. "[A] <u>Bivens</u> action cannot be brought against the United States, its agencies, or its government officials who are sued in their official capacities." <u>Shah v. Samuels</u>, 121 F. Supp. 3d 843, 845 (E.D. Ark. Aug. 17, 2015) (citing <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-86 (1994)); <u>see also</u> <u>Patel v. U.S. Bureau of Prisons</u>, 515 F.3d 807, 812 (8th Cir. 2008) ("Bivens allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations"). Olson has not alleged that any governmental employees acted in their personal capacities. The United States has not waived its sovereign immunity with regard to <u>Bivens</u> claims. <u>See</u> <u>Phelps v. U.S. Fed. Gov't</u>, 15 F.3d 735, 739 (8th Cir. 1994).

### 2. Tax Refund Statutes

The United States has conditionally waived sovereign immunity in suits for refunds of taxes and penalties paid to the IRS. <u>Hansen v. United States</u>, 248 F.3d 761, 763 (8th Cir. 2001); <u>see also</u> 28 U.S.C. § 1346(a)(1).[11] But, that waiver is conditioned upon the taxpayer having paid the disputed tax or penalty and having filed an administrative claim with the IRS prior to filing suit. <u>Hansen</u>, 248 F.3d at 764; <u>see also</u> 26 U.S.C. § 7422(a).[12] Since Olson has not alleged he has filed a refund claim with the

---

[11] Pursuant to 28 U.S.C. § 1346(a)(1), district courts have original jurisdiction over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been . . . wrongfully collected under the internal-revenue laws."

[12] Pursuant to 26 U.S.C. § 7422(a), prior to any suit for the recovery of any tax or penalty paid, the taxpayer must file a claim for a refund or credit with the Secretary of the Treasury.

IRS for either the SRP or FICA/SECA taxes he has paid, the tax refund statutes do not waive sovereign immunity on Olson's refund claims. See Abston v. Comm'r, 691 F.3d 992, 995 (8th Cir. 2012); Hansen, 238 F.3d at 763.

### 3. APA

The APA waives sovereign immunity for certain actions for nonmonetary relief against the United States. The APA's waiver, however, excludes claims for money damages, claims for which there is an adequate remedy at law, and claims seeking relief which is barred by some other statute. To the extent Olson seeks monetary relief, a waiver of sovereign immunity is not found in the explicit language of the APA.[13] Additionally, some of Olson's nonmonetary claims come within the APA's exclusion of waiver for claims seeking relief which is barred by other statutes.

The defendants argue that Olson's requests for injunctive and declaratory relief under the FICA/SECA are barred by the Anti-Injunction Act (AIA) and the tax exception of the Declaratory Judgment Act (DJA), and thus are excluded from the APA's waiver.[14] Finally, the defendants argue that, even if the APA were construed as a waiver of sovereign immunity, Olson's claims would not be ripe for review because Olson has not

---

[13] The defendants also argue that Olson's claim for monetary damages is excluded from the APA's sovereign immunity waiver because he has an adequate remedy at law, i.e., a refund suit. The defendants identify two cases which held that a plaintiff seeking to avoid payment of the SRP did not have an adequate remedy in a refund suit, but distinguish those cases because Olson, unlike the plaintiffs in the other two cases, has paid the SRP and employment taxes, and so could find an adequate remedy through a refund suit. (Doc. #18, p. 13 n.7). Regardless of whether Olson has an adequate remedy in a refund suit, his claim for monetary damages is excluded from the APA's sovereign immunity waiver, because that waiver excludes claims for monetary damages.

[14] The defendants do not argue that Olson's requests for injunctive and declaratory relief under the ACA are barred by either the AIA or the DJA.

applied to any agency for a religious exemption. Olson has not responded to the defendants' arguments concerning the APA.

The court next considers whether Olson's claims for injunctive and declaratory relief under the FICA/SECA are barred by the AIA and the DJA, thus excluding them from the APA's waiver of sovereign immunity.

### a. AIA—FICA/SECA Claims

As to the AIA, the defendants acknowledge that it does not apply to collection of the SRP. See Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S. Ct. 2566, 2583-84 (2012). But, the defendants contend that the AIA bars Olson's FICA/SECA claims because it bars suits to "restrain[] the assessment or collection of any tax." 26 U.S.C. § 7421(a). Since Olson seeks a declaration that he qualifies for the FICA/SECA exemptions or that the FICA/SECA are unconstitutional, he effectively seeks a declaration that would bar collection of the Social Security and Medicare taxes. See Hansen v. Dep't of Treas., 528 F.3d 597, 601 (9th Cir. 2007) (citing Bob Jones Univ. v. Simon, 416 U.S. 725, 732 (1974)). Olson's suit is therefore barred under the AIA, unless he could satisfy a narrow judicially created exception to the AIA.[15] That exception requires Olson to demonstrate "(1) irreparable injury if his case is not heard, and (2) certainty of success on the merits." Id. (citing Bob Jones Univ, 416 U.S. at 737). Olson has not demonstrated either element. Any injury Olson might incur by paying FICA/SECA taxes is not irreparable, since that

---

[15] None of the statutory exceptions provided in 28 U.S.C. §§ 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(I), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436 are applicable to Olson's claims.

injury could be redressed through a properly filed refund suit.[16] Additionally, Olson's success on the merits is not certain, since he admittedly does not qualify for the religious exemption and since the FICA/SECA religious exemptions have been found constitutional. See Jaggard v. Comm'r, 582 F.2d 1189, 1190 (8th Cir. 1978) (per curiam). Since Olson's claims for injunctive and declaratory relief concerning the FICA/SECA are barred by another statute—the AIA—those claims are excluded from the APA's waiver of sovereign immunity.

### b.    DJA—FICA/SECA Claims

The DJA, like the AIA, forbids suits seeking to restrain the assessment or collection of any tax. Porter v. Fox. 99 F.3d 271, 274 (8th Cir. 1996). Olson seeks to restrain assessment and collection of FICA/SECA taxes, but that claim is barred by the DJA. The DJA's bar to Olson's claims for declaratory and injunctive relief under the FICA/SECA further demonstrates that those claims are excluded from the APA's waiver of sovereign immunity, because those claims are barred by other statutes.

### 4.    Summary—Sovereign Immunity

Olson's claim for monetary damages, his claim for injunctive and declaratory relief under the FICA/SECA, his claim for refunds of the SRP and FICA/SECA taxes, and any Bivens claims are barred by sovereign immunity. A waiver of the United States' sovereign immunity with regard to any of those claims is not supported by the APA or the tax refund statutes. Olson has not identified any other statute which might waive

---

[16] Olson seeks a refund of the SRP and all FICA/SECA taxes he has paid in his lifetime. But, prior to filing a refund suit in federal court, Olson must file an administrative claim for a refund with the IRS. See 26 U.S.C. § 7422(a).

sovereign immunity.[17] The defendants' motion to dismiss those claims should be granted since the United Stated has not waived its sovereign immunity, and this court therefore lacks jurisdiction over those claims.

## C.    Ripeness

Since Olson's claims for declaratory and injunctive relief under the ACA are not barred by sovereign immunity,[18] the court next considers whether they are ripe for review. Defendants contend that even if the APA waives sovereign immunity, those claims are not ripe for judicial review.

The ripeness doctrine seeks to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Neb. Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1037 (8th Cir. 2000) (quoting Abott Labs v. Gardner, 387 U.S. 136, 148 (1967)) (internal quotation marks omitted). In determining whether a case is ripe for review, a court must evaluate (1) whether the issue is fit for judicial decision, and (2) whether withholding court consideration would result in hardship to the parties. Id. at 1038 (citation omitted).

The fitness prong considers the "court's ability to visit an issue." Id. "In appeals from administrative regulation, the fitness prong questions finality and exhaustion." Id. But, "[e]xception may be had where an issue is largely legal in nature, may be resolved without further factual development, or where judicial resolution will largely settle the

_____

[17] None of the constitutional or statutory provisions which Olson cites concerning sovereign immunity contradicts the law upon which the defendants rely, and which is binding on the district courts.

[18] Defendants have not argued that the AIA or the DJA bar the ADA claims for declaratory and injunctive relief. Though, as discussed above, the district judge could dismiss Olson's claims for declaratory and injunctive relief solely on the basis that he did not allege any waiver of sovereign immunity.

parties' dispute." Id. (internal citations omitted). The hardship prong examines whether delayed review may result in actual damages, or in heightened uncertainty which would force a litigant to modify its behavior to avoid future adverse consequences. Id. (citing Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733-34 (1998). Each prong must be satisfied "to at least a minimal degree" to satisfy ripeness concerns. Id. at 1039.

### 1. Fitness

Defendants argue that Olson has not satisfied the fitness prong since he has not applied for a religious exemption to the ACA and there has therefore been no agency action on his claim for an exemption. As discussed above, on one hand, Olson argues that the religious exemption is unconstitutional and he does not assert an entitlement to that exemption. On the other hand, he argues it is unconstitutional but asserts an entitlement to the exemption without the required waiver of Medicare and Social Security benefits. Either way, it appears he could not obtain the relief he seeks by applying for a religious exemption. Additionally, Olson's claims are largely legal in nature, his claims may be resolved without further factual development, and judicial resolution would settle the dispute. The district judge should conclude that Olson has satisfied the fitness prong of the ripeness inquiry.

### 2. Hardship

Defendants do not question that Olson has satisfied the hardship prong of the ripeness inquiry. Delayed review would result in Olson incurring actual damages, i.e., he will be required to either pay the SRP or purchase qualifying health insurance. The district judge should conclude that Olson has satisfied the hardship prong and that his claims for declaratory and injunctive relief concerning the ACA are ripe for judicial review.

### D.    Age Discrimination Act

To the extent Olson asserts any claims pursuant to the ADA—i.e., that the religious exemption discriminates against those born after 1950—this court lacks jurisdiction over those claims. See Maloney v. SSA, 517 F.3d 70, 76 (2d Cir. 2008) ("[T]he [ADA] does not apply to a federal agency implementing a federal program."). The district judge should therefore dismiss any ADA claims.

## V.    Failure to State a Claim

The defendants contend that, even if Olson has standing and even if his claims are not barred by sovereign immunity, his claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To withstand a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 555. A court must determine whether the facts in a complaint "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In other words, the pleadings must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a Rule 12(b)(6) motion, the court accepts factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. Bohan v. Honeywell Int'l, Inc., 366 F.3d 606, 608 (8th Cir. 2004). Under these standards, the court considers the only claims not barred by sovereign immunity—Olson's claims for declaratory and injunctive relief concerning the ACA.

### A.    Claims that SRP is Unconstitutional Tax

Olson describes the ACA as an "overreach of power" and contends that the SRP is an "illegal and unconstitutional tax." (Doc. #14, pp. 3, 14). But, the United States Supreme Court has upheld the constitutionality of the SRP. See Nat'l Fed'n of Indep. Bus., 132 S. Ct. at 2600. In that case, the Court stated that the SRP required "for not obtaining health insurance may reasonably be characterized as a tax," and it held that "the Constitution permits such a tax." Id. Accepting all factual allegations of his pleadings as true, and construing them in Olson's favor, he has not stated a claim that plausibly gives rise to an entitlement to relief. Olson's claim alleging that the SRP is an unconstitutional tax should therefore be dismissed.

### B.    Establishment Clause Claim

Olson asserts that the ACA's religious exemption "favors one religion over another" and is "excessive[ly] entangle[d] with religion." (Doc. #14, pp. 3, 15). But, § 1402(g), detailing the requirements of the religious exemption from the ACA's SRP and the FICA/SECA, has been found constitutional under the Establishment Clause. See Jaggard, 582 F.2d at 1190 (stating that § 1402(g) neither advances nor inhibits religion). In a factually analogous case, the ACA's religious exemption was found constitutional under the Establishment Clause. See Cutler, 797 F3d at 1181-82; see also Cutler v. Wilkinson, 544 U.S. 709, 713 (2005) ("the government may accommodate religious practices without violating the Establishment Clause").

Further, the purpose of the ACA's religious exemption is not to favor any particular religion; rather, it is to accommodate religious practices while protecting taxpayers. In Cutler, the DC Circuit explained the purpose of the exemption:

The [ACA], just like the Social Security exemption, is carefully calibrated to protect the government—and thus taxpayers who do not share the religious sensibilities of those covered by the exemption—from later having to pick up the tab from which the adherent has been exempted. . . .

. . . [T]he qualifications for exemption are not drawn on sectarian lines; they simply sort out which faiths have a proven track record of adequately meeting the statutory goals. And the exemption promotes the Establishment Clause's concerns by ensuring that those without religious objections do not bear the financial risk and price of care for those who exempt themselves from the tax. As configured by this specific statutory framework, that is an objective, non-sectarian basis for cabining the exemption's reach.

797 F.3d at 1182-83. Religious sects whose members qualify for the ACA's religious exemption have made reasonable provision for their dependent members for a substantial period of time; that is designed to protect other taxpayers, not to improperly favor or target any religion. Since the ACA's religious exemption has been found constitutional under the Establishment Clause, Olson has not stated a claim that plausibly gives rise to relief under the Establishment Clause. Olson's claim alleging that the ACA's religious exemption violates the Establishment Clause should therefore be dismissed.

## C.     Free Exercise Clause Claim

Olson contends that the ACA's requirement to either purchase health insurance or pay the SRP violates his religious beliefs and practices. (Doc. #14, p. 6). As discussed above, the SRP has been found to be a constitutionally permitted tax. In lieu of purchasing health insurance, Olson can make the SRP. The allegations of his pleadings do not describe how payment of the SRP restricts his right to freely practice his religion.

Further, the ACA's religious exemption does not violate the Free Exercise Clause since it does not prohibit religious conduct; rather, it accommodates the religious

practices of "those who believe it a violation of their faith to participate in the [national insurance program]." See Cutler, 797 F.3d at 1182; see also Wilkinson, 544 U.S. at 260 (In creating § 1402(g), Congress was "sensitive to the needs flowing from the Free Exercise Clause."). Since Olson has not alleged facts showing that the ACA restricts his right to freely practice his religion, he has not stated a claim that plausibly gives rise to relief, and his claim alleging that the ACA violates the Free Exercise Clause should therefore be dismissed.

### D. Equal Protection Clause Claim

To the extent that Olson contends that the ACA religious exemption is unconstitutional because it applies only to religious sects in existence since 1950, that same limitation—within § 1402(g)—has been found constitutional as to FICA/SECA under the Fifth Amendment's[19] Equal Protection Clause. See Bethel Baptist Church v. United States, 822 F.2d 1334, 1342 (3d Cir. 1987) ("[A] broad exemption might affect the soundness of the . . . system;" therefore, the limitation of the religious exemption to sects in existence since December 31, 1950, "is inherently reasonable."). Since the religious exemption's limitation to religious sects in existence since 1950 has been found constitutional under the Equal Protection Clause, Olson has not stated a claim that plausibly gives rise to relief under the Equal Protection Clause. To the extent that Olson contends that the ACA's religious exemption violates the Equal Protection Clause, that claim should therefore be dismissed.

_____

[19] Olson also alleges that the ACA violates the Fourteenth Amendment, but the Fourteenth Amendment does not apply to the federal government. See United States v. McClinton, 815 F.2d 1242, 1244 n.3 (8th Cir. 1987).

### E. Claims Raised Subsequent to Complaint

In a supplement to his response to defendants' motion to dismiss, Olson raises a new claim under the International Religious Freedom Act (IRFA). (Doc. #24, pp. 2-3). In a surreply, Olson asserts that the ACA is an unconstitutional ex post facto law and an unconstitutional bill of attainder. (Doc. #25, p. 8). The claims are not properly before the court because they were not alleged in Olson's complaint or in the supplement to his complaint. The claims should therefore be dismissed on that basis alone. See Frentzel v. Moore, No. 4:06CV214, 2008 WL 2559422, at *3 n.16 (E.D. Mo. June 23, 2008) (stating that new claims raised in response to a motion to dismiss are not properly before the court). Alternatively, the district judge should find that Olson has not stated a plausible claim under the IRFA, a plausible claim that the ACA is an unconstitutional ex post facto law, or a plausible claim that the ACA is an unconstitutional bill of attainder.

The IRFA "does not provide a private cause of action for civil litigants." Strege v. Dep't of Motor Vehicles, No. 15-1907, 2015 WL 1954452, at *2 n.2 (D. Minn. Apr. 29, 2015) (citing Bey v. Ohio, No. 1:11 CV 1213, 2011 WL 5024188, at *2 (N.D. Ohio Oct. 19, 2011) (The IRFA "authorizes government tracking of and intervention in cases of religious persecution abroad."). Because there is no private right of action under IFRA, Olson's IRFA claim does not meet the plausibility test.

The ACA is not an ex post facto law. "An ex post facto law is one which reaches back in time to punish acts which occurred before enactment of the law." See Peeler v. Heckler, 781 F.2d 649, 651 (8th Cir. 1986). The ACA's SRP is not retroactive—it does not require individuals to make an SRP for not obtaining qualifying health insurance prior to the enactment of the ACA. Olson's claim that the ACA is an unconstitutional ex post fact law therefore does not meet the plausibility test.

Nor is the ACA a bill of attainder. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425 (1977). However, a statute is not an unconstitutional bill of attainder if it proscribes conduct only and does not inflict punishment on a specific group. Ueckert v. United States, 581 F. Supp. 1262, 1266 (D.N.D. 1984). The ACA's requirement that an individual either purchase qualifying health insurance, obtain an exemption to the SRP, or pay the SRP applies to everyone. It does not target a specific group. Additionally, the SRP is not a punishment; it is a tax. See Nat'l Fed'n of Indep. Bus., 132 S. Ct. at 2595 (stating that "[i]n distinguishing penalties from taxes, this Court has explained that if the concept of penalty means anything, it means punishment for an unlawful act or omission" and that "the shared responsibility payment may for constitutional purposes be considered a tax, not a penalty.") (citation and internal quotation marks omitted). Olson's claim that the ACA is an unconstitutional bill of attainder therefore does not meet the plausibility test.

## VI.   Claims Against Other Governmental Entities and Employees

Though not naming them in the caption, Olson's complaint and supplement seek relief against the United States Congress, the President of the United States, the DOJ, a former Attorney General, the FBI, the FBI Director, and an FBI special agent. (Doc. #1, p. 3; Doc. #14, p. 11). Even though Olson has not named any of those governmental entities and employees as defendants in the heading of his complaint or supplement to the complaint, liberally construing the complaint and supplement, the court will consider Olson's claims against those entities and employers.

The defendants move to dismiss any claims against those governmental entities and employees for lack of personal jurisdiction and insufficient service of process. Alternatively, the defendants argue (1) that federal courts have no jurisdiction to enjoin Congress or the President; (2) that to the extent the claims are construed as <u>Bivens</u> claims, they cannot be brought against the United States, its agencies, or its employees acting in their official capacities; and (3) that Olson has alleged no facts demonstrating any individual violated his Constitutional rights.

If Olson had named the above-mentioned governmental agencies and employees as defendants in his complaint, they would be appropriately dismissed for lack of personal jurisdiction and insufficient service of process since Olson has not demonstrated service on those agencies or employees. But, it is not clear that Olson actually intended to name those governmental agencies and employees as defendants. (<u>See</u> Doc. #14, pp. 2-4, 9-11) (Olson's explanation of why he named the Social Security Administration, the Department of Treasury, and the heads of those departments as the only defendants in his complaint). In the supplement to his complaint, Olson does not request to have the governmental agencies and employees added as defendants, but rather to have them added as part of his claim for relief.[20] <u>Id.</u> at 11. Of course, Olson cannot obtain relief against non-parties, and therefore his requested relief against those not named as defendants should be denied.

Even if Olson had named the governmental agencies and employees as defendants and had effectuated proper service on them, he would not be entitled to the

---

[20] Although Olson refers to "other defendants" in one instance, he does not specifically identify those "other defendants." <u>Id.</u> at 4.

relief he seeks against them. Olson requests that the court enjoin the President of the United States and the United States Congress "from taking any action that would protect those members [of Congress] who voted for and continue to support the ACA," and to enjoin them from protecting themselves from "punitive or exemplary damages caused by their dereliction of duty in oath to protect the U.S. Constitution." (Doc. #1, p. 3) (capitalization and punctuation altered). The court lacks jurisdiction to grant the injunctive relief Olson requests. See Franklin v. Massachusetts, 505 U.S. 788, 802-03 (1992) ("[T]his court has no jurisdiction . . . to enjoin the President in the performance of his official duties."); Mississippi v. Johnson, 71 U.S. 475, 500 (1866) (neither Congress nor the President "can be restrained in its action by the judicial department").

With regard to the other governmental entities and employees, Olson seeks to hold them liable for "egregious violations of failing to protect and defend the Constitution," for failing to protect Olson's right to "freely practice his sincere religious beliefs," and for "failing to investigate and act on [Olson's] Criminal Complaint." (Doc. #14, p. 11). To the extent Olson raises Bivens claims, this court lacks jurisdiction over those claims against the United States, its agencies, and its employees acting in their official capacities, and Olson has not alleged that any governmental employees acted in their personal capacities. Further, a private citizen does not have a constitutional right or any other basis to compel a criminal investigation. Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation.").

**Conclusion**

For the reasons discussed above, it is **RECOMMENDED** that:

1.　　The defendants' motion to substitute the United States as the sole defendant be **GRANTED**;

2.　　The defendants' motion to dismiss for lack of subject matter jurisdiction be **GRANTED** as to (1) any <u>Bivens</u> claims, (2) Olson's claim for refunds of the SRP and FICA/SECA taxes, (3) his claim for monetary damages, (4) his claim for injunctive and declaratory relief under the FICA/SECA, and (5) any ADA claims;

3.　　The defendants' motion to dismiss for lack of subject matter jurisdiction be **DENIED** as to Olson's claims for injunctive and declaratory relief regarding the ACA;

4.　　The defendants' motion to dismiss for failure to state a claim be **GRANTED** as to (1) Olson's claim that the SRP is an unconstitutional tax, (2) his Establishment Clause claim regarding the ACA, (3) his Free Exercise Clause claim regarding the ACA, and (4) his Equal Protection Clause claim regarding the ACA;

5.　　The defendants' motion to dismiss for lack of personal jurisdiction and insufficient service of process, or alternatively for failure to state a claim, be **GRANTED** as to all claims raised against other governmental agencies and employees;

6.　　The district judge not consider any claims raised subsequent to the complaint or the supplement to the complaint, or alternatively, dismiss

those claims for failure to state a plausible claim; and

7.      Olson's complaint be **DISMISSED** in its entirety without prejudice.

Dated this 3rd day of March, 2017.

        */s/ Alice R. Senechal*
        Alice R. Senechal
        United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT[21]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **March 17, 2017**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Objections shall be **double spaced** and shall **not exceed twenty pages**. No exhibits may be attached to the objections. Any responses to objections are due by **March 23, 2017**. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[21] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.